UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

DONNA ANN GABRIELE CHECHELE,

     Plaintiff,

 - against -

EDUARDO S. ELSTAIN; CONSULTORES
ASSETS MANAGEMENT S.A.;
CONSULTORES VENTURE CAPITAL
URUGUAY S.A.; AGROINVESTMENT
S.A.; CONSULTORES VENTURE
CAPITAL LIMITED; IFIS LIMITED;
INVERSIONES FINANCIERAS DEL SUR
S.A.; CRESUD SOCIEDAD ANONIMA
COMERCIAL, INMOBILIARIA,
FINANCIERA Y AGROPECUARIA;
AGROLOGY S.A.; IRSA INVERSIONES Y
REPRESENTACIONES SOCIEDAD
ANONIMA; TYRUS S.A.; JIWIN S.A.;
IDALGIR S.A.; REAL ESTATE
INVESTMENT GROUP L.P.; REAL
ESTATE INVESTMENT GROUP II L.P.;
and REAL ESTATE INVESTMENT
GROUP III L.P.,

     Defendants,

 -and-

HERSHA HOSPITALITY TRUST,

     Nominal Defendant.
------------------------------------------------------X

**OPINION AND ORDER**

11 Civ. 3320 (SAS)



SHIRA A. SCHEINDLIN, U.S.D.J.:

1

I.      INTRODUCTION

Donna Ann Gabriele Chechele owns shares in Hersha Hospitality Trust ("Hersha"), a Maryland real estate investment trust.[1] She has brought a shareholder derivative suit against Eduardo S. Elstain, one of Hersha's trustees who at all relevant times owned more than ten percent of Hersha's outstanding Class A common shares, and against fifteen corporate entities controlled by Elstain, each of which also controlled, either directly or indirectly, at least ten percent of Hersha's stock.[2] Chechele claims that defendants violated Section 16(b) of the Securities and Exchange Act of 1934 ("the Act") by purchasing approximately $17 million of Hersha stock from Hersha's underwriters at its October 29, 2010 public offering and then selling that stock between December 2010 and March 2011 for a total profit of approximately $1.31 million.[3] Chechele claims that these profits should be disgorged from defendants and returned to Hersha. Defendants have moved to dismiss Chechele's claim, arguing that their purchase of Hersha stock was exempted from the prohibition on short swing

---

[1]    *See* Complaint ("Compl.") ¶¶ 3-4. Unless otherwise indicated, all factual statements are taken from the Complaint and assumed to be true for the purpose of adjudicating this motion to dismiss.

[2]    *See id.* ¶¶ 5-13.

[3]    *See id.* ¶¶ 14-19.

2

insider profits because it was authorized by the Hersha Board and thus permissible under Rule 16b-3 ("the Rule") of the Securities and Exchange Commission ("SEC").[4] Because defendants' purchase is not covered by the terms of Rule 16b-3, which exempts in relevant part only "acquisitions from the issuer" and not acquisitions from intermediaries such as underwriters, and because there are no compelling reasons to depart from the plain language of the Rule, their motion to dismiss is denied.

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court may disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[5] In contrast, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[6]

---

[4] *See* Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure ("Def. Mem.") at 1.

[5] *Ashcroft v. Iqbal*, 556 U.S. 662, ___, 129 S.Ct. 1937, 1949 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[6] *Id.* at 1950. *Accord Den Hollander v. Copacabana Nightclub*, 624 F.3d 30, 32 (2d Cir. 2010).

To survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must meet a standard of "plausibility."[7] A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] "[A] district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint."[9] "Where public records that are integral to a . . . complaint are not attached to it, the court, in considering a Rule 12(b)(6) motion, is permitted to take judicial notice of those records."[10] However, "[i]f the court takes judicial notice, it does so in order to determine what statements they contained . . . not for the truth of the matters asserted."[11]

### III.  APPLICABLE LAW

Section 16(b) of the Act provides for the disgorgement of certain profits earned through insider trading, regardless of the insider's intention when

---

[7]  *Twombly*, 550 U.S. at 564.

[8]  *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[9]  *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[10]  *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007).

[11]  *Id.* (quotation, citation, and emphasis omitted).

making the trades:

> For the purpose of preventing the unfair use of information which may have been obtained by such beneficial owner, director, or officer by reason of his relationship to the issuer, any profit realized by him from any purchase and sale, or any sale and purchase, of any equity security of such issuer (other than an exempted security) or a security-based swap agreement involving any such equity security within any period of less than six months, unless such security or security-based swap agreement was acquired in good faith in connection with a debt previously contracted, shall inure to and be recoverable by the issuer irrespective of any intention on the part of such beneficial owner, director, or officer in entering into such transaction . . .[12]

Section 16(b) explicitly empowers the SEC to exempt from the law's ambit any transactions that the agency determines are "not comprehended within the purpose" of the law, and the SEC has done so in Rule 16b. The Rule exempts "[t]ransactions between an issuer and its officers or directors," that meet certain conditions.[13]  Acquisitions *from the issuer* are exempt if the transaction is approved by the issuer's board of directors (or by an independent committee of the board) or approved by the issuer's shareholders, or if the security is held for more than six months.[14]

## IV.   DISCUSSION

---

[12]    15 U.S.C. § 78p(b).

[13]    *See* 17 C.F.R. § 240.16b-3.

[14]    *See id*. § 240.16b-3(d).

The issue presented by this motion is discrete and surprisingly novel.[15] Defendants were insiders who made their purchase of Hersha stock from underwriters who had been hired by the company to conduct a public offering.[16] Rule 16b-3 exempts from the insider trading rules certain "[t]ransactions between *an issuer* and its officers or directors" (emphasis added).  Defendants argue that this exemption properly extends to transactions between an underwriter and a director when "the material terms" of the transaction were negotiated between the insider and the issuer, approved by the issuer's Board of Directors, and then dictated to the underwriter by the issuer.[17]  Chechele argues that the plain text of the rule forecloses defendants' argument and that guidance from the SEC confirms the plain meaning.[18]

---

[15]     Neither the parties nor the Court are aware of any prior cases addressing this question.  One possible reason for the novelty of the issue may be that no defendant has previously attempted to take refuge in Rule 16b-3 for purchases made from an underwriter at a public offering.

[16]     *See* Def. Mem. at 1, acknowledging that "as a technical matter," defendants purchased their shares "from underwriters in a public offering at the offering price rather than directly from the issuer."

[17]     *See id.* at 2.

[18]     *See* Plaintiff's Memorandum of Law in Opposition to the Motion to Dismiss the Complaint ("Pl. Mem.") at 5.  Chechele also argues, in the alternative, that even if defendants' purchases were eligible for exemption under Rule 16b-3, questions of fact remain regarding whether Hersha's board complied with the Rule when it approved of the transaction.

When interpreting a statute, the well-established rules of statutory construction instruct that "the inquiry begins with the plain language of the statute and 'where the statutory language provides a clear answer, it ends there as well.'"[19] A court must determine "'whether the language at issue has a plain and unambiguous meaning with regard to the particular dispute in the case.'"[20] The provision at issue must be read in conjunction with the rest of the statute, but "as long as the statutory scheme is coherent and consistent, there generally is no need for a court to inquire beyond the plain language of the statute."[21] Nonetheless, a court may depart from the plain language "if literal application of the statute will produce a result demonstrably at odds with the intentions of [the statute's] drafters."[22] The same principle applies to the interpretation of a regulation: "The plain language in a regulation governs unless that meaning would lead to absurd results."[23]

---

[19] *Peralta-Taveras v. Gonzales*, 488 F.3d 580, 584 (2d Cir. 2007) (quoting *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 438 (1999)).

[20] *In re Caldor*, 303 F.3d 161, 168 (2d Cir. 2002) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340 (1997)).

[21] *United States v. Ron Pair Enters.*, 489 U.S. 235, 240-41 (1989).

[22] *Id.* at 242.

[23] *Zhen Nan Lin v. United States Dep't of Justice*, 459 F.3d 255, 262 (2d Cir. 2006) (quotation and citation omitted).

The plain language of Rule 16b-3 exempts transactions between issuers and their officers and directors, not between underwriters and the issuer's insiders and directors. Defendants do not argue that this plain meaning leads to absurd results. Instead, they argue that the Rule's purpose is best served by reading it to exempt their purchase of Hersha stock from the underwriters.[24] Defendants argue that because their transaction with the underwriters was strictly limited by the terms laid out by Hersha's Board of Trustees, it "falls squarely within the types of transactions that, according to the SEC, 'do not appear to present the same opportunities for insider profit on the basis of non-public information as do market transactions by officers and directors.'"[25] "Because Section 16(b) is a strict liability rule and can subject insiders to liability regardless of their actual access to inside information,"[26] defendants argue, and because "the prevailing view is to apply the statute only when its application would serve its goals,"[27] the Rule's plain meaning should be extended to include the transaction at

---

[24] *See* Def. Mem. at 7-10.

[25] *Id.* at 7 (quoting Ownership Reports and Trading by Officers, Directors and Principal Security Holders, Exchange Act Release No. 34-37260, 61 Fed. Reg. 30,376, 30,377 (June 14, 1996) ("1996 Release").

[26] *Id*. at 5.

[27] *Kern Cnty. Land Co. v. Occidental Petroleum Co.*, 411 U.S. 582, 596 (1973).

issue.

There are four reasons why defendants' motion fails. *First*, although the underwriting agreement appears to have been written based on the assumption that the underwriters would sell the shares to the defendants, it did not *bind* the underwriters to do so: they were free to do what they wished with the stock.[28] That is to say, they were independent actors not synonymous with the issuer itself. *Second*, and more importantly, the transaction occurred on the open market as part of a public offering. Through the market, it altered the prices at which other shares were sold and thus impacted other buyers. The 1996 Release exempted transactions that posed little risk of insider trading because those transactions were fundamentally different from "market transactions by officers and directors."[29] But this transaction was a market transaction by officers and directors.

*Third*, the SEC has provided the following guidance: "Rule 16b-3 would not exempt an officer's or director's purchase of the issuer's stock in a public offering pursuant to a 'friends and family' allocation."[30] Chechele argues that the transaction in question was a classic "friends and family" or "directed

---

[28] *See* Pl. Mem. at 12-13.

[29] 1996 Release at 30,377.

[30] Compliance and Disclosure Interpretation No. 123.17 (May 23, 2007), *available at* http://www.sec.gov/divisions/corpfin/guidance/sec16interp.htm.

share" purchase. Defendants contend that the reasoning behind the SEC's interpretation does not apply here, because the issuer dictated the quantity,[31] price, and date terms to both the underwriter and the defendants. Even if true, however, it is unclear how this fact would distinguish the transaction from a classic directed share or friends and family program, in which certain individuals are given the right to buy a certain quantity of shares at the initial offering price at the time of the initial offering.[32] Even though the SEC's guidance is not entitled to any deference beyond its power to persuade, it confirms the plain meaning of the Rule and undercuts defendants' argument that the SEC intended the Rule to exempt such transactions.

*Fourth* and finally, defendants have provided no powerful reason to depart from the plain language of the Rule. They have not even posited any important public policy reasons to permit insiders to make short swing profits by

---

[31] Chechele argues that Hersha did not fix the quantity of shares that had to be sold to defendants by the issuer. She argues that Hersha set the number of shares that the defendants were permitted to buy, but did not obligate the underwriters to sell any particular quantity of shares to defendants. This appears to be an accurate reading of the underwriting agreement. *See* Pl. Mem. at 12-13.

[32] "Contrary to [defendants'] claim, there is no special class of 'friends and family' programs in which someone other than the issuer directs to whom shares are sold. When the staff [of the SEC] said that the exemption would not reach a 'public offering pursuant to a 'friends and family' allocation,' it was addressing the same fact pattern now before the Court." Pl. Mem. at 12.

selling securities that they previously purchased from underwriters at public offerings pursuant to terms (largely) set by the issuer. In the absence of some compelling argument, this Court has neither the power nor the inclination to expand the scope of permissible insider trading in contravention of the plain language of the Securities Act and the SEC's duly promulgated regulations.

## V. CONCLUSION

Because Chechele's complaint plausibly states a claim upon which relief can be granted, defendants' motion to dismiss is denied. The Clerk of the Court is ordered to close this motion [Docket No. 12]. A conference is scheduled for March 5, 2012 at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
February 24, 2012

## -Appearances-

**For Plaintiff:**

James A. Hunter, Esq.
Hunter & Kmiec
150 East 44th Street, No. 9A
New York, New York 10017
(646) 666-0122

**For Defendants:**

Robert Houck, Esq.
Alejandra de Urioste, Esq.
Alexander Feldman, Esq.
Clifford Chance US, LLP
31 West 52nd Street
New York, New York 10019
(212) 878-8000

**For Hersha Hospitality Trust:**

Joseph J. Saltarelli, Esq.
Hunton & Williams, LLP
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1048